# LLEWELLYN v. UPSON.

# UPSON v. LLEWELLYN.

---

PATENTS; INTERFERENCE; DILIGENCE; ORIGINALITY; PATENTABILITY.

1. In an interference, in which one of the parties was shown to have conceived and disclosed the invention about two months before the filing date of his adversary, which constituted reduction to practice of certain of the counts, it was *held,* affirming the decision of the Commissioner, on a consideration of the evidence, that as to these counts the former party was lacking in diligence, and that therefore the latter was entitled to an award of priority.

2. Where one of the counts in an interference called for "a piling element comprising a pile composed of concrete having a grouting groove in one face, and having embedded in one face a metallic strain-resisting member to engage an adjacent element," and one of the parties, who was unskilled in the art, testified that the other party, who was skilled in the art, had in an interview suggested a further improvement whereby a larger opening in the concrete should be left for the insertion of a jet pipe to facilitate grouting, and had also admitted in a letter that he was working up the invention in conjunction with the other party, it was *held* that the latter party, and not the former, was the originator of the invention, and entitled to an award of priority.

3. In an interference, this court must assume that each count is patentably different from every other count.

Nos. 1026 and 1029. Patent Appeals. Submitted March 15, 1916. Decided April 3, 1916.

HEARING on cross appeals from a decision of the Commissioner of Patents in an interference proceeding.

*Affirmed in part and reversed in part.*

The facts are stated in the opinion of the Court.

*Mr. C. C. Linthicum* and *Mr. D. Anthony Usina* for Llewellyn.

*Mr. Parker W. Page* and *Messrs. Kerr, Page, Cooper & Hayward* for Upson.

Mr. Justice ROBB delivered the opinion of the Court:

These are appeals from decisions of the Patent Office tribunals in an interference proceeding in which the Examiner of Interferences awarded to Frederick T. Llewellyn priority as to each of the twenty-four counts. The Examiners in Chief awarded priority to Maxwell M. Upson as to what they conceived to be the broad counts, namely, counts 1, 7, 8, 12, 13, 14, and 15. They further found that the novel feature of count 11 was disclosed to Llewellyn by Upson, and hence awarded priority as to that count to Upson. As to the remaining counts the decision of the Examiner of Interferences was affirmed. The First Assistant Commissioner, to whom the appeal was taken, affirmed the decision of the Examiners in Chief except as to count 11, which he awarded to Llewellyn.

We here reproduce counts 1, 2, 3, 8, 11, 14, 20, 23, and 24, as sufficiently illustrative of the two groups:

"1. A piling element comprising a pile composed of concrete and having embedded in it at each of two of its respective sides, separate metallic members, each constructed to interlock with adjacent piling elements."

"2. A piling element comprising a pile composed of concrete and having embedded in it at each of two of its respective

sides, separate metallic members, each constructed to interlock with adjacent piling elements, said pile having a tie embedded in it between said members and connecting them together."

"3. A piling element comprising a pile composed of concrete having in one face a cavity, and having operatively embedded in another face a metallic strain-resisting member for engagement with a corresponding cavity in an adjacent piling element."

"8. A piling element consisting of a pre-molded pile composed essentially of concrete and having embedded in it a rolled steel member not affecting the integrity of the concrete structure but extending outside the concrete and adapted to co-operate with a succeeding piling element to resist strains at right angles to the vertical length of the pile."

"11. A piling element comprising a pile composed of concrete and having a grouting groove in one face, and having embedded in one face a metallic strain-resisting member to engage an adjacent element."

"14. A piling element comprising a pile composed of concrete and containing a metallic guiding member arranged to resist lateral strains and to engage with and guide an adjacent pile to a grounded position."

"20. Piling comprising piles composed essentially of concrete and arranged in succession to form the piling, and metallic means for each pair of adjacent piles, each such means being secured to both of its adjacent piles, substantially rigidly in the line of the piling, to prevent material separation of the piles from each other in the line of the piling."

"23. Piling comprising successive piles composed of concrete, one having an embedded metallic interlocking member, and the other an interlocking cavity to receive the metallic member."

"24. Piling comprising successive piles composed of concrete held together by metallic interlocking members."

As will be readily understood from a reading of these claims, they relate to a composite, concrete, and metal sheet piling, in which the metal element is cast in the edge of the concrete pile,

and shaped to interlock with a mating element in an adjacent pile.

The Examiner of Interferences ruled that Llewellyn conceived and disclosed the invention covered by all the counts as early as January 20, 1908. The Board awarded him conception and disclosure as to all the counts except count 11, as early as February 19, 1908. The Board further ruled that Upson's patent, No. 938,091, the application for which was filed March 10, 1908, constituted reduction to practice of counts 1, 7, 8, 12, 13, 14, and 15, and that, inasmuch as the evidence clearly showed that Llewellyn was lacking in diligence, priority should be awarded Upson as to those counts. In this ruling the Assistant Commissioner concurred. As these two tribunals have carefully considered the evidence relating to Llewellyn's lack of diligence, and as our own examination of the record convinces us of the correctness of their conclusion, we shall accept it as a sufficient basis for the award of priority to Upson as to the counts just mentioned.

It appears that in May, 1909, in an interview between Llewellyn and Upson, features of this invention were discussed. Mr. Llewellyn testified that Mr. Upson, after studying the matter, "suggested a further improvement whereby a larger opening in the concrete should be left for the insertion of a jet pipe to facilitate grouting." The Board ruled that this constituted an admission that Upson, and not Llewellyn, was the originator of this idea. We are convinced of the correctness of the Board's conclusion upon this point. Llewellyn was not skilled in this art, while Upson was the chief engineer and general manager of the Raymond Concrete Pile Company, and highly skilled in the art. The desirability and importance of the improvement would therefore naturally occur to Upson. Certainly there is nothing in the record before this interview to indicate that the novel feature of count 11 had ever occurred to Llewellyn. Indeed, Llewellyn introduced in evidence a letter dated May 13, 1909, and addressed to his superior officer, a Mr. J. C. Neale, in which he says: "Herewith we hand you a rough sketch illustrating in general a scheme which the writer

is working up in conjunction with Mr. Upson, engineer of the Raymond Concrete Pile Company."

Upson here contends, as he did before the Patent Office, that there is no patentable difference between the so-called broad counts awarded him, and those awarded to Llewellyn. What our opinion might be on this question, were it before us, we need not intimate, since it is settled law that in an interference proceeding we must assume that each count is patentably different from every other count. We have no more jurisdiction to question the patentability of the counts in an interference proceeding than in an *ex parte* proceeding. But, as suggested by the Assistant Commissioner, "the Primary Examiner may and should consider whether the differences between the counts awarded Upson and those awarded to Llewellyn are patentable, when the case is returned to him at the end of this priority contest, and refuse to Llewellyn such counts as are not patentably different from those awarded to Upson." The Board and the Assistant Commissioner ruled that as to the counts awarded Llewellyn, excepting of course count 11, there was no evidence on behalf of Upson to prove conception prior to his interview with Llewellyn in May of 1909. In other words, that he derived his knowledge from Llewellyn. Assuming, as we must, that these counts are patentably different from those awarded Upson, there is no escape from the conclusion reached by the Patent Office.

We therefore affirm the decision as to all the counts save count 11. As to that count the decision is reversed and priority awarded Upson.    *Affirmed in part and reversed in part.*